**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MIDLAND STATES BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-00354 JAR |
| | ) | |
| YGRENE ENERGY FUND INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (Doc. Nos. 19, 21)[1] and Plaintiff's Motion for Remand (Doc. No. 22). The motions are fully briefed and ready for disposition.

**I**.     **Background**

Plaintiff Midland States Bank ("Midland") filed this action in the Circuit Court of St. Louis County, Missouri on February 15, 2021 against Defendants Ygrene Energy Fund Inc., Ygrene Energy Fund Missouri LLC and Energy Equity Funding, LLC (collectively, "Ygrene"); St. Louis County Clean Energy Development Board (the "Board"); St. Louis County (the "County"); and the St. Louis County Collector of Revenue, Mark R. Devore (the "Collector"). See Midland States Bank v. Ygrene Energy Fund Inc., et al., No. 21SL-CC00715 (21st Jud. Cir.). According to the complaint, Barat Academy Foundation and Barat Academy (collectively "Barat Academy"), previously owned property located at 17815 and 17803 Wild Horse Creek Road in Chesterfield,

---

[1] Ygrene and the Board filed a motion to dismiss (Doc. Nos. 19) and the County and the Collector joined in that motion (Doc. No. 21). Accordingly, the Court has addressed Defendants' arguments together in its Memorandum and Order. The County and the Collector are only named in three of the eight counts asserted by Midland, Counts I, VII, and VIII.

1

Missouri ("the Property"). (Compl., Doc. No. 7 at ¶ 40). Barat Academy secured financing for the Property through a certain bond backed by an irrevocable letter of credit ("LOC") issued by Midland and secured by a Deed of Trust executed on May 1, 2012. (Id. at ¶ 42). From its inception, Barat Academy struggled financially (id. at ¶ 41) and in early 2020, defaulted under the bond. When Barat Academy was unable to repay Midland for the LOC, Midland foreclosed on the Property in August 2020, making it the current owner of the Property. (Id. at ¶ 43).

Prior to foreclosure and without Midland's knowledge, Barat Academy applied for financing with Ygrene under Missouri's Property Assessed Clean Energy ("PACE") Program for certain improvements to the school and was approved. (Id. at ¶¶ 44-45). By way of background, Missouri's PACE Program allows for financing of energy efficiency and renewable energy improvements on private property. These improvements are paid for through special assessments, which are given priority over any mortgages. (Id. at ¶¶ 9, 16, 27, 28).

Missouri enacted its PACE legislation in 2010, see R.S. Mo. § 67.2800 et seq. The PACE Act authorizes the formation of clean energy development boards by one or more municipalities to establish PACE programs. (Id. at ¶ 17). These boards are political subdivisions of the state with the power "to levy and collect special assessments" and "to finance a project under an assessment contract." (Id. at ¶¶ 18-19). Missouri's PACE Act provides that the Board may establish requirements for financing, but mandates that the Board "ensure that any property owner approved by the [B]oard … shall have good creditworthiness or shall otherwise be considered a low risk for failure to meet the obligations of the program or conduit financing." (Id. at ¶ 20). The Act also provides that the "special assessments shall be collected by the county collector in the same manner and with the same priority as ad valorem real property taxes." (Id. at ¶ 21). If the property owner fails to pay the special assessments, the Board may foreclose on the lien. (Id. at ¶ 28.) As a result,

PACE Program administrators such as Ygrene are required to provide notice to the record lien holders, including mortgagees, and in commercial cases, consent of the lien holder is required. This provides an opportunity for the lender to object prior to the issuance of the assessment. (Id. at ¶ 29.)

The Board entered into certain agreements with Ygrene to provide program administration services for residential properties and with RMC Pace Administrator-STL County, LLC ("RMC") to provide program administration services for commercial properties. (Id. at ¶¶ 25-26). According to the commercial PACE Handbook, commercial property owners must secure mortgage or senior lender consent as a requisite to participating in the PACE Program. (Id. at ¶¶ 35-36). The property owned by Barat Academy was a commercial property. (Id. at ¶ 52).

Midland alleges upon information and belief that with the Board's consent, RMC delegated the operation and funding of "small commercial" projects, valued at $750,000 or less, to Ygrene. (Id. at ¶ 37). According to the Small Commercial PACE Handbook, once the property owner receives notice of approval, Ygrene is required to notify any lenders. (Id. at ¶ 38). Such notification does not prevent a lender from asserting that the execution of a special assessment contract is a breach of the loan documents. (Id. at ¶ 39). Midland alleges that Ygrene and the Board improperly deemed the improvements at Barat Academy to be a "small commercial" project. (Id. at ¶ 53).

Barat Academy executed two Assessment contracts with the Board – one on June 5, 2019 for LED lighting in the amount of $132,872.50, plus program fees and interest, and one on September 27, 2019 for HVAC improvements in the amount of $736,059.00, plus program fees and interest. (Id. at ¶¶ 46-50). Midland alleges upon information and belief that Ygrene split the improvements into two assessment contracts to avoid triggering the requirement that the mortgage lender, i.e., Midland, consent to the improvements. (Id. at ¶ 54). In those contracts, Ygrene

affirmed it had notified any lenders, yet at no time did Ygrene or the Board provide Midland with notice and/or seek Midland's consent for the improvements prior to the execution of the contracts. (Id. at ¶¶ 51, 55).

On June 6, 2019 and September 27, 2019, Ygrene sent notices of the Assessment contracts to Midland Mortgage, an Oklahoma community bank with no connection to Midland, the lender in this case. (Id. at ¶¶ 56-60). Midland never received notice until its counsel contacted Ygrene directly – more than a year after the Assessment contracts were executed. (Id. at ¶ 62). In December 2020, Midland paid the annual assessments due in the amount of $93,408.90 under protest. (Id. at ¶ 63).

In Count I of its complaint (against the Board and the County), Midland seeks a declaration that the Missouri PACE Act and St. Louis County Ordinance No. 26,164, granting lien priority to PACE assessments created thereunder, violate the United States Constitution and Missouri Constitution by depriving it of property without due process of law. In Count II (against the Board), Midland alleges the PACE assessments constitute an unconstitutional taking under the Fifth Amendment of the United States Constitution. Midland further alleges claims of Fraud (Count III) and Negligence (Count VI) against Ygrene and the Board based on the alleged lack of notice of the PACE assessments; and Slander of Title (Count IV) and Quiet Title (Count V) against the Board. In Count VII (against the Board and the Collector), Midland seeks a declaration that the PACE assessments are not due or are not valid liens on the Property. In Count VIII (against the Collector), Midland seeks a refund of the PACE Assessments it paid in protest.

Defendants removed the action to this Court on March 22, 2021 based on federal question jurisdiction (Doc. No. 1) and moved to dismiss the case (Doc. Nos. 19, 21). Midland filed its motion to remand on April 2, 2021, arguing that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341,

divests this Court of subject matter jurisdiction. Midland further argues that even if the Court finds the TIA does not apply, principles of comity prevent this Court from exercising jurisdiction.

## II.    Motion for remand

First, the Court will address Midland's motion for remand. "A defendant may remove a state law claim to federal court only if the action originally could have been filed there." In re Prempro Prods. Liab. Litig., 591 F.3d 613, 619 (8th Cir. 2010). See also 28 U.S.C. § 1441(a). After removal, a plaintiff may move to remand the case to state court, and the case should be remanded if it appears that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The party invoking federal jurisdiction and seeking removal bears the burden of establishing federal jurisdiction, and all doubts about federal jurisdiction are resolved in favor of remand. Hubbard v. Federated Mut. Ins. Co., 799 F.3d 1224, 1227 (8th Cir. 2015).

## Tax Injunction Act

The TIA prohibits federal courts from exercising jurisdiction over certain kinds of claims involving state taxation: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Thus, "[t]wo conditions must be satisfied to invoke the protection of the TIA: first, the surcharges must constitute 'taxes,' and second, the state remedies available to plaintiffs must be 'plain, speedy and efficient.'" Ass'n for Accessible Medicines v. James, 974 F.3d 216, 221 (2d Cir. 2020). The Act's prohibition extends to declaratory judgment actions as well as to suits for injunctive relief. Burris v. City of Little Rock, 941 F.2d 717, 720 (8th Cir. 1991); Coon v. Teasdale, 567 F.2d 820, 822 (8th Cir. 1977). Moreover, the TIA applies to taxes imposed by municipalities as well as those imposed by states. See Soo Line R.R. Co. v. City of Harvey, 424 F. Supp. 329, 330 (D.C.N.D.1976) (holding that a special assessment

levied by a municipal corporation against a railroad is a tax within the meaning of 28 U.S .C. § 1341).

**Comity doctrine**

Unlike the jurisdictional bar set forth in the TIA, comity, by contrast, is a prudential doctrine of abstention. City of Fishers v. Netflix, Inc., 501 F. Supp. 3d 653, 656 (S.D. Ind. 2020) (citation omitted). Comity is "the duty of federal courts to cede litigation seeking to enjoin state tax statutes to the state court." Id. at 657 (quoting Perry v. Coles County, 906 F.3d 583, 587 (7th Cir. 2018)). The comity doctrine is broader, or "[m]ore embracive than the TIA," and serves to "restrain[ ] federal courts from entertaining claims for relief that risk disrupting state tax administration." Levin v. Commerce Energy, Inc., 560 U.S. 413, 417 (2010).

**Discussion**

Whether an assessment is a state "tax" for purposes of the TIA is a question of federal law. Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, 115 F.3d 1372, 1382 (8th Cir. 1997). Thus, a court making such an inquiry is not bound by the characterization applied to the levy in question by the authority assessing or collecting it. Id. The Court notes that a broad construction of "tax" is necessary to honor Congress's goals in promulgating the TIA, specifically, that of "preventing federally-based delays in the collection of public revenues by state and local governments." Nw. AR Home Builders Ass'n, Inc. v. City of Rogers, No. CIV. 07-5148, 2008 WL 615927, at *3 (W.D. Ark. Mar. 3, 2008) (citations omitted).

Relying on Burris, 941 F.2d at 720, Midland argues that PACE assessments are taxes for purposes of the TIA and that because it seeks a determination that would ultimately enjoin the County and the Board from collecting the special assessments from Midland, the TIA divests this Court of subject matter jurisdiction. In Burris, the court determined that special assessments levied by the City of Little Rock to connect a sewer improvement district to the City's sewer systems

were taxes for purposes of the TIA. Midland further argues that even if the TIA does not apply, the broader doctrine of comity compels remand.

Defendants respond that PACE assessments are not a state tax in the context of the TIA because they are not used for general revenue and are not imposed by the County. Rather, PACE assessments are levied as a repayment mechanism for the Board's financing of energy efficiency and renewable energy improvements to the Property. Defendants argue that the congressional intent behind the enactment of the TIA was not to remove federal court jurisdiction from all aspects of state tax administration, but rather to prevent federal courts from hearing cases where the relief sought would "reduce the flow of state tax revenue." See Hibbs v. Winn, 542 U.S. 88, 106 (2004). See also Waters v. Home Depot USA, Inc., 446 F. Supp. 3d 484, 490 (E.D. Mo. 2020) (TIA did not divest court of subject-matter jurisdiction over customer's suit seeking, *inter alia*, to bar retailer from charging a sales tax on purchases made through its website because it did "not restrain either the assessment or collection of tax by Missouri."). Here, Defendants contend the flow of revenue in these transactions is independent of the general revenue for the County or the State. In further response, Defendants argue the comity doctrine does not compel remand because this action will not disrupt the flow of state tax revenue and does not involve unsettled areas of law.

In reply, Midland argues that contrary to Defendants' assertion that the Court has subject matter jurisdiction over this action in its entirety, the Court lacks jurisdiction over Count VIII of its complaint seeking a refund. Pursuant to R.S. Mo. § 139.031, taxpayers protesting the payment of current taxes are required to file an action against the Collector in the circuit court of the county in which the collector maintains his office, within 90 days after filing a protest. See Pennell v. Collector of Revenue, 703 F. Supp. 823 (W.D. Mo. 1989).

There is no bright line between assessments that are taxes and those that are not; however, most courts agree that "[t]he classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community." San Juan Cellular Tel. Co. v. Public Serv. Comm'n, 967 F.2d 683, 684-85 (1st Cir. 1992).

To determine whether an assessment is a "tax" within the meaning of the TIA, a majority of federal courts have adopted the three-factor test from San Juan Cellular Ass'n for Accessible Medicines v. James, 974 F.3d 216, 222 n.7 (2d Cir. 2020) (collecting cases). The three factors are: "(1) the nature of the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed." Hexom v. Oregon Dep't of Transp., 177 F.3d 1134, 1137 (9th Cir. 1999) (quoting Bidart Bros. v. California Apple Comm'n, 73 F.3d 925, 930 (9th Cir. 1996)). These courts also appear to agree that the third factor, which focuses on the purpose of the assessment and the ultimate use of funds, is the most important. See San Juan, 974 F.3d at 222. The Eighth Circuit has not explicitly adopted this analysis; however, as Defendants note, it has looked to the "primary purpose" of an assessment to determine whether it was a tax under the TIA. See Ben Oehrleins, 115 F.3d 1at 1382-83, holding that the TIA did not bar federal jurisdiction in a challenge to a county waste flow control ordinance because the primary purpose of the ordinance was regulatory rather than revenue-raising. The court found the fact that the ordinance raised revenue by way of tipping fees charged by a designated waste facility did not render the ordinance a tax. "While the relief [plaintiffs] seek may well affect the revenue that the County raises from the designated facilities, this secondary economic effect would not require the court to enjoin, suspend, or restrain any tax collection." Id. at 1383.

Under the <u>San Juan</u> analysis, the Court concludes that the TIA does not apply on the facts of this case to bar federal jurisdiction in this matter. First, PACE assessments are imposed not by the Missouri state legislature, but the Board, a limited-purpose governmental authority. <u>See Entergy Nuclear Vermont Yankee, LLC v. Shumlin</u>, 737 F.3d 228, 232 (2d Cir. 2013). Second, PACE assessments are not imposed on the general public but rather on property improved by clean energy improvements. Lastly, and most significantly, PACE assessments are not "contributed to a general fund" and "spent for the benefit of the entire community" like a classic tax, <u>San Juan Cellular</u>, 967 F.2d at 684-85, but are imposed only on a specific benefitted property for the purpose of repaying the costs of clean energy improvements on that property. Indeed, in its briefing in opposition to Defendants' motions to dismiss, Midland concedes that PACE assessment liens are contracts for improvements to private property and not for public benefit. (Doc. No. 29 at 6).

The comity doctrine is similarly inapplicable. Midland argues this Court has remanded several cases involving local tax issues, citing <u>City of Creve Coeur, Missouri v. DIRECTV, LLC</u>, No. 4:18CV1453 RLW, 2019 WL 3604631 (E.D. Mo. Aug. 6, 2019) and <u>City of Maryland Heights v. TracFone Wireless, Inc.</u>, No. 4:12CV00755 AGF, 2013 WL 791866, at *2 (E.D. Mo. Mar. 4, 2013). As Defendants correctly point out, however, both cases involved claims for declaratory and injunctive relief by Missouri municipalities against out-of-state businesses related to collection of local tax ordinances. Because these types of claims risk disrupting state and local tax administration, the court correctly found the state court was better positioned to address the issues under state law. Here, the PACE assessments do not raise issues of state tax collection, as they are not revenue-raising taxes. <u>See</u> <u>Hibbs</u>, 542 U.S. at 107 n.9 (Comity precludes federal jurisdiction "only when plaintiffs have sought district court aid in order to arrest or countermand state tax collection.").

9

Lastly, Midland's argument that this Court lacks subject matter jurisdiction over its claim for a refund pursuant to R.S. Mo. § 139.031 (Count VIII), is unavailing as the PACE assessments at issue do not constitute a state tax. Accordingly, Plaintiff's motion for remand will be denied.

## III.     Motions to dismiss

Next, the Court will address Defendants' motions to dismiss. In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). While a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp.2d 1137, 1140 (E.D. Mo. 2007).

As a threshold matter, Defendants argue that Midland's claims are barred by the PACE Act's "special statute of limitations"; lack of standing; and the merger doctrine.

**Statute of limitations**

Defendants contend that Midland's claims are time barred by the PACE Act's "special statute of limitations" set forth in Mo. Rev. Stat. § 67.2810.4:

> No lawsuit to set aside the approval of a project, an assessment contract, or a special assessment levied by a clean energy development board, or to otherwise question

10

the proceedings related thereto shall be brought after the expiration of sixty days from the date that the assessment contract is executed.

According to Defendants, because Midland filed this action on February 19, 2021, more than 60 days from the date the Assessment Contracts at issue were executed on June 10, 2019 and October 2, 2019, Midland's action is untimely and must be dismissed.

In response, Midland argues this limitation does not apply to bar its claims because it was not a party to the Assessment Contracts and had no notice of them. Citing Ross v. Kan. City Gen. Hosp. and Med. Ctr., 608 S.W.2d 397, 400 (Mo. banc 1980), Midland argues that a statute of limitations tied to the execution of a contract without any notice requirements is "clearly and plainly unreasonable" and an unconstitutional denial of due process.

When relevant facts are uncontested, the question of whether a statute of limitations bars an action can be decided by a court as a matter of law. See Rolwing v. Nestle Holdings, Inc., 437 S.W.3d 180, 182 (Mo. 2014), as modified (Aug. 19, 2014) (citation omitted). Missouri has recognized that the concept of equitable tolling can be applied to statutes of limitations when it is unfair to bar the plaintiff's claim, i.e., when the plaintiff was prevented from timely filing suit by the defendant's actions or other pending litigation. See, e.g., Ambers-Phillips v. SSM DePaul Health Ctr., 459 S.W.3d 901, 907 (Mo. 2015). Here, Midland alleges Ygrene and the Board failed to provide it with notice of the Assessment Contracts pursuant to PACE program requirements. The Court finds the alleged lack of notice to Midland to be an equitable basis for the application of tolling to Midland's failure to file its lawsuit by the statutory deadline. Accordingly, the motion to dismiss the action as time barred will be denied.

**Standing**

Next, Defendants argue that Midland lacks standing to challenge the PACE assessments on the Property because Midland was not a party to the PACE financing transaction between the

11

Board and Barat Academy. In other words, Midland has no standing based on its status as a "taxpayer" seeking to challenge government expenditures to a third party. See, e.g., Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125 (2011). Midland responds that standing to raise a constitutional question is determined by the existence of harm which occurred – or will likely occur – because of an unconstitutional statute, and that it has specifically pled the PACE Act and Ordinance deprived it of due process and impaired its constitutionally protected property interest, thereby establishing its standing to raise these claims.

Standing focuses on whether the party seeking to bring a complaint before a federal court "is a proper party to request an adjudication of a particular issue." Flast v. Cohen, 392 U.S. 83, 100 (1968). "To be a proper litigant, the party must have alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." Defs. of Wildlife, Friends of Animals & Their Env't v. Hodel, 851 F.2d 1035, 1038 (8th Cir. 1988) (citations and internal quotation marks omitted). The constitutional minimum of standing requires that "plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167, 180-181 (2000); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Delorme v. U.S., 354 F.3d 810, 815 (8th Cir. 2004).

After careful consideration, the Court finds this is not the appropriate procedural posture to decide this issue. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations

12

embrace those specific facts that are necessary to support the claim.'" <u>Lujan</u>, 504 U.S. at 561 (quoting <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 889 (1990)). The elements required for standing "are not mere pleading requirements but [are] rather an indispensable part of the plaintiff's case." <u>Id</u>. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." <u>Id</u>. The Court will, therefore, deny Defendants' motion on the issue of standing as premature and allow the parties to develop the record.

**Merger doctrine**

Defendants further argue that when Midland foreclosed on the Property and became the record owner, its deed of trust was extinguished under the doctrine of merger, barring its claims premised on lien holder rights. Midland responds that its interest in the Property is still encumbered by the Special Assessment liens and that as a result, this Court can grant relief to Midland, regardless of the foreclosure.

One legal authority describes the concept of merger as "one of the most complex and confusing areas of the law of mortgages," <u>see</u> Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 6.15 (4th ed. 2002), while another states simply that "the doctrine of merger does not apply to mortgages." Restatement (Third) of Property: Mortgages § 8.5 (1997). Missouri courts recognize the general principle that "[u]nder the theory of merger, when property is conveyed by a mortgagor to the mortgagee, the equitable title is merged into the legal title, and the lesser estate, or the lien held by the mortgagee, is destroyed." <u>Savannah Place, Ltd. v. Heidelberg</u>, 122 S.W.3d 74, 83 (Mo. Ct. App. 2003) (quoting <u>Riggs v. Kellner</u>, 716 S.W.2d 3, 4-5 (Mo. Ct. App. 1986)). <u>See also</u> <u>Reed v. Inness</u>, 102 S.W.2d 711, 716 (Mo. Ct. App. 1937). Missouri courts also recognize,

however, that mergers are not favored, either in law or equity. Id. (citing Morgan v. York, 91 S.W.2d 244, 247 (Mo. Ct. App. 1936) and Londoff v. Garfinkel, 467 S.W.2d 298, 300-01)).

"[T]he question whether the doctrine of merger applies or not is determined by the intention of the party in whom the estates unite[.]" Morgan, 91 S.W.2d at 248. Absent an express declaration of intent, "intention will be presumed in accordance with [that party's] interest as disclosed by an examination of all the circumstances of the case." Id. (citation omitted). If merger is against that party's best interest, it will not be deemed intended by the parties. See Heidelberg, 122 S.W.3d at 83-85. There are also several exceptions to the merger doctrine, including fraud, accident, or mistake. Wills v. Whitlock, 139 S.W.3d 643, 651 (Mo. Ct. App. 2004).

Based on Midland's allegations that the Special Assessment Liens are adverse and prejudicial to its interest in the Property under the Deed of Trust, which the Court accepts as true for purpose of Defendants' motions, the Court finds the application of merger would be against Midland's best interest, and thus not intended by Midland. Defendants' motions will be denied based on the doctrine of merger.

Next, the Court addresses Defendants' arguments directed to Midland's specific claims.

**Counts I and II –Due Process Claim and Takings Clause Claim**

A person may not be deprived of a protected interest, such as a property interest, without due process of law. See U.S. Const. amend. XIV, § 1; see also Swipies v. Kofka, 419 F.3d 709, 715 (8th Cir. 2005). Additionally, private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. To state a procedural due process violation, a plaintiff must plead facts showing: (1) a protected interest; and (2) that he was deprived of that interest without "the opportunity to be heard at a meaningful time and in a meaningful manner." Swipies, 419 F.3d at 715 (quotation omitted). To state a claim under the takings clause, "a claimant 'must identify a

14

property interest cognizable under the Fifth Amendment [.]'" Hawkeye Commodity Promotions, Inc. v. Miller, 432 F. Supp. 2d 822, 851 (N.D. Iowa 2006) aff'd sub nom. Hawkeye Commodity Promotions, Inc. v. Vilsack, 486 F.3d 430 (8th Cir. 2007) (quotation and citations omitted). A plaintiff must also allege that either the government caused the owner to suffer a permanent and physical invasion of his property or completely deprived the owner of all economically beneficial use of the property without just compensation. Id. at 854.

In Count I, Midland alleges that it possessed a mortgage lien on the Property which became subordinate to the lien created by the Assessment Contracts; that it was provided no notice of the Special Assessments; and that neither the PACE Act nor the Ordinance provide for any notice or opportunity to be heard by third party lien holders as to whether the proposed improvements associated with any special assessment would result in a special benefit to the property. (Compl. at ¶¶ 70-72). In Count II, Midland alleges the Special Assessments constitute a taking of private property for public use, for which it was not compensated. (Id. at ¶¶ 83-84).

In support of dismissal, Defendants argue that Midland's constitutional challenges to the PACE Act fails as a matter of law because PACE assessments do not deprive lien holders of constitutionally protected property interests. Defendants further argue that Midland was given adequate notice of the PACE assessments because they were recorded. Defendants cite Zipperer v. City of Fort Myers, 41 F.3d 619 (11th Cir. 1995) and FDIC v. City of New Iberia, 921 F.2d 610 (5th Cir. 1991) for the proposition that an ordinance imposing and prioritizing special assessment liens over a mortgage lien without notice to the mortgage holder is not an unconstitutional taking without due process. Defendants acknowledge there is no Eighth Circuit or Missouri case which has addressed this issue but point to State ex rel. Missouri Clean Energy Dist. v. McEvoy, 557

S.W.3d 473, 477-78 (Mo. Ct. App. 2018), as illustrative of a Missouri court recognizing the power of the Missouri legislature to give statutory liens priority over other liens.

In response, Midland relies on Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 (1983), to argue that its mortgage on the Property, and right to foreclose thereon, are legally protected property interests such that Defendants' failure to comply with notice and consent requirements prior to execution of the Assessment Contracts violated its due process rights. Midland also notes the Eighth Circuit has yet to weigh in on whether special assessments for local improvements constitute takings under the Fifth Amendment, see Creason v. City of Washington, 435 F.3d 820, 825 (8th Cir. 2006), so the issue is far from settled in this District.

In Mennonite, the Supreme Court interpreted Indiana's tax sale statute and addressed the issue of "whether notice by publication and posting provides a mortgagee of real property with adequate notice of a proceeding to sell the mortgaged property for nonpayment of taxes." 462 U.S. at 792. Significantly, the mortgagee had a recorded security interest, but the Indiana tax sale law failed to require that notice by mail of the tax sale and process for redemption be given to the mortgagee. The Supreme Court held that a mortgagee has a substantial property interest that is significantly affected by a tax sale because the tax sale "immediately and drastically diminishes the value of this security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors." Id. at 798. The Court ultimately held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." Id. at 800. Thus, Midland argues, its mortgage on the Property is a protected property interest and the fact that the Assessment Contracts were recorded does not suffice as reasonable notice under due process.

16

In Zipperer, the local government made improvements upon certain mortgaged property. 41 F.3d at 621. When the owner failed to pay the assessments, the city filed a lien on the property, which took priority over the mortgagee's lien. Id. No notice was given to the mortgagee, who subsequently foreclosed on the property. Id. The mortgagee filed suit against the city, asserting that the special assessments and their lien prioritization "impaired the value of his property interest" without due process and citing Mennonite, 462 U.S. 791, in support. Id. at 622. The Zipperer court held the mortgagee had a constitutionally protected property interest in his mortgage but noted that the lien prioritization did not diminish his property interest "immediately and drastically," as did the tax sale in Mennonite. Because the mortgagee would "retain a significant interest in the land even after its subordination to the special assessment [,] ... the imposition of the special assessments and their lien prioritization d[id] not immediately and drastically diminish his interests in a manner that would implicate a Mennonite due process deprivation." 41 F.3d at 624 (quoting Mennonite, 462 U.S. at 798).

In New Iberia, a factually similar case, the mortgagee argued that the levying of a special assessment and lien for public improvements constituted a "taking." 921 F.2d at 611. The court disagreed, holding that the imposition of a special assessment and its consequent lien prioritization did not constitutionally impair or deprive the mortgagee of its interest in the mortgaged land. The court distinguished Mennonite stating:

> Although Mennonite espoused a far-reaching requirement of notice to property owners adversely affected by state actions, the case did not analyze, beyond its straightforward facts, what constitutes a "deprivation" of property. It is hardly arguable that under Indiana's law, the interest of a mortgagee is "drastically diminished" by a tax sale that yields a lien with priority over all recorded interests. Mennonite in no way suggested, however, that the taxing authority's decision to levy taxes, which resulted in the unpaid assessment on the underlying property, similarly affected the mortgagee or demanded adequate notice to the mortgagee.

17

Id. at 614. The New Iberia court also noted the considerable law that local tax assessments are not struck down in violation of the Fourteenth Amendment unless they amount to outright confiscation of property. Id. at 615-16 (citing cases).

Upon careful consideration, the Court finds Zipperer and New Iberia, while instructive, are not dispositive. First, the procedural posture of these cases, decided on motions for summary judgment with proffered evidence, differs significantly from this case, at the motion to dismiss stage. Further, as noted by the court in City of Panama City v. Head, 797 So. 2d 1265 (Fla. Dist. Ct. App. 2001), in New Iberia, there was no contention by the mortgagee that New Iberia's special assessment was confiscatory or drastically diminished the value of the security interest. Id. at 1270 (citing New Iberia, 921 F.2d at 615). Similarly, in Zipperer, it was uncontroverted that the mortgagee retained a significant interest in his land, enhanced by the improvements financed by the assessment, even after the subordination of his mortgage to the special assessment. Id. (citing Zipperer, 41 F.3d at 624). Here, the record has not yet been developed on the issue whether the imposition of the Special Assessment Liens and consequent prioritization "drastically diminished" Midland's security interest in the Property so as to constitute a taking without due process. Defendants' conclusory argument that Midland actually benefitted from the improvements to the Property cannot support dismissal at the pleading stage. Accordingly, Defendants' motions will be denied as to Counts I and II.

**Count IV - Slander of Title; Count V - Quiet Title; Count VII - Declaratory Judgment) Count VIII - Tax Refund**

Defendants argue that given the constitutionality of the PACE Act, both facially and as applied, Midland's title and tax refund claims fail as a matter of law. In response, Midland argues it has sufficiently pled the Special Assessment Liens were wrongly levied due to lack of notice in Counts IV, V, VII and VIII and that the Court may grant it relief either on constitutional grounds

or based on principles of equity, citing <u>Green v. Lake Montowese Ass'n</u>, 387 S.W.3d 413 (Mo. Ct. App. 2012) (homeowners exempted from special assessment on properties not connected to subdivision water delivery system) and <u>Surrey Condo. As'n, Inc. v. Webb</u>, 163 S.W.3d 531 (Mo. Ct. App. 2005) (condo association not permitted to assess unit owner a maintenance fee because, *inter alia,* unit owner would not benefit from the expenditures).  Defendants reply that these cases are unavailing because, here, the Property directly benefitted from the PACE improvements.

As discussed above, the Court has found that Midland alleges plausible due process and takings clause claims in Counts I and II. Midland's remaining claims survive dismissal under the same analysis. As for Defendants' contention that unlike the property owners in <u>Green</u> and <u>Surrey</u>, Midland fails to state a claim for equitable relief, the Court again notes Defendants' conclusory argument that Midland benefitted from the improvements to the Property cannot support dismissal at the pleading stage. Defendants' motions will be denied as to Counts IV, V, VII and VIII.

**Count III - Fraud; Count VI - Negligence**

Defendants argue that given the constitutionality of the PACE Act and the fact that Midland is no longer a lien holder, Midland's fraud and negligence claims can be dismissed on this basis alone. The Court has addressed these arguments above and rejected them. Additionally, Defendants argue that Midland's negligence claim fails due to the lack of any legal duty owed to Midland in the PACE Act transaction and that Midland's fraud claim fails to meet the particularity requirement of Fed. R. Civ. P. 9(b).

To state a claim for negligence under Missouri law, a plaintiff must plead facts that support each of the following elements: (1) the defendant had a duty to protect the plaintiff from injury; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injury. <u>White v. BAC Home Loans Servicing, L.P.</u>, No. 4:10-CV-2137 CAS, 2011 WL 1483919,

at *11 (E.D. Mo. Apr. 19, 2011) (citation omitted). Defendants argue Midland has failed to provide factual allegations supporting its claim that the Board and Ygrene owed a duty to notify Midland of the Assessment Contracts; and that Midland has failed to sufficiently allege damages.

Upon review, the Court finds Midland has stated a claim for negligence. Midland alleges the Board and Ygrene were negligent by failing to notify it in advance of the execution of the Assessment Contracts, providing notice instead to an unrelated company. (Compl. at ¶¶ 118-121). Midland plausibly alleges the Board and Ygrene's duty to notify arises from common law and from the obligations assumed in the Assessment Contracts and the Residential and Small Commercial PACE Handbooks. See Aragon v. Wal-Mart Stores E., LP, 735 F.3d 807, 809 (8th Cir. 2013) (The Missouri Supreme Court recognizes that a duty of care may be imposed by common law, a controlling statute or ordinance, or a contractual relationship.). Specifically, Midland alleges the Assessment Contracts warrant notice:

> The Administrator, on behalf of the Property Owner, has provided to the holders or loan services of record of any existing mortgages or deeds of trust encumbering or otherwise secured by the Property a notice of the Property Owner's intent to enter this Assessment Contract together with … description of estimated costs and terms of financing for the Project[.]

(Id. at ¶¶ 114, 115). Midland alleges notice is also required pursuant to the PACE Handbooks (id. at ¶ 116) and is common practice in the industry such that it constitutes a "public duty" (id. at ¶ 117). Whether the Board and Ygrene owed Midland a duty as a matter of law will depend upon the specific circumstances of this case and cannot be determined at this stage of the proceedings. Midland further alleges the Board and Ygrene's failure to notify Midland of the Assessment Contracts resulted in the recordation of the Special Assessment Liens and subordination of its Deed of Trust on the Property and that it was damaged thereby. (Id. at ¶¶ 122-23). These allegations adequately state a claim for negligence and Defendants' motion to dismiss Count VI will be denied.

As for Midland's fraud claim, Fed. R. Civ. P. 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." The Eighth Circuit has interpreted this rule to require plaintiffs to include "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby" in their complaints. Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009) (citations omitted); see also Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549-50 (8th Cir. 1997) (to satisfy Rule 9(b), complaint must contain allegations about the who, what, where, when, and how of the fraud). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Prop. v. Quality Inns Int'l, 61 F.3d 639, 644 (8th Cir. 1995).

Under Missouri law, the elements of a claim of fraud are: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, (9) and his consequent and proximate injury." Paul v. Farmland Indus., Inc., 37 F.3d 1274, 1276-77 (8th Cir. 1994) (quoting Washburn v. Kansas City Life Ins. Co., 831 F.2d 1404, 1411 (8th Cir. 1987)). A misrepresentation "may be made by conduct calculated to mislead and fraudulently obtain an undue advantage." Reis v. Peabody Coal Co., 997 S. W.2d 49, 64 (Mo. Ct. App. 1999) (citation omitted).

Midland alleges the Board and Ygrene knew or should have known that Barat Academy did not have good creditworthiness and was at high risk for defaulting (Compl. at ¶ 87); that, "upon information and belief," the Board and Ygrene split the improvement work to be completed under the Assessment Contracts into two contracts to avoid triggering the requirement that Midland

21

consent to the project (id. at ¶¶ 95-96); and that, "upon information and belief," the Board and Ygrene failed to timely send the June and September Notices and sent both notices to the wrong entity with the intent to deprive Midland of the opportunity to object (id. at ¶ 98).

It is questionable whether Midland's allegations based on "information and belief" satisfy the particularity requirements of Rule 9(b). White v. BAC Home Loans Servicing, L.P., No. 4:10-CV-2137 CAS, 2011 WL 1483919, at *12 (E.D. Mo. Apr. 19, 2011) (citing Dronbnak, 561 F.3d at 783 ("Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement." (citation omitted)). Moreover, the allegations, even construed in Midland's favor, does not provide sufficient factual support for each element of a claim of fraud. Therefore, the Court will dismiss Count III for failure to state a claim.

### Count VII - Declaratory Judgment

In Count VII, Midland requests the Court issue a declaration that no money is due and owing from Midland related to the Assessment Contracts or the Special Assessment Liens. Citing State ex rel. SLAH v. City of Woodson Terrace, 378 S.W.3d 357, 361-62 (Mo. banc 2012), Defendants argue Midland's claim for declaratory judgment fails because Missouri's exclusive remedy for adjudicating tax refunds is set forth 139.031, R.S. Mo., which is the subject of Midland's refund claim asserted in Count VIII. Midland responds that its claim for declaratory judgment is a proper alternative claim and therefore survives a motion to dismiss. In reply, Defendants maintain the claim is not properly pled in the alternative and should be dismissed as duplicative of Midland's other claims.

At this stage of the proceedings, the Court finds it would be premature to dismiss an otherwise viable claim simply because it appears to be duplicative. Given that other claims may be dismissed upon summary judgment, the Court declines to dismiss the declaratory judgment

claim at this time. <u>R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist. No. 2149</u>, 894 F. Supp. 2d 1128, 1147–48 (D. Minn. 2012).

      Accordingly,

      **IT IS HEREBY ORDERED** that Plaintiff's Motion for Remand [22] is **DENIED**.

      **IT IS FURTHER ORDERED** that Defendant St. Louis County Clean Energy Development Board and Defendants Ygrene Energy Fund Inc., Ygrene Energy Fund Missouri, LLC, and Energy Equity Funding, LLC's Motion to Dismiss [19] is **GRANTED** as to Count III (Fraud) of Plaintiff's Complaint. In all other respects the motion is **DENIED.**

      **IT IS FURTHER ORDERED** that the Motion of Defendants St. Louis County and Mark Devore [21] is **DENIED**.

Dated this 29th day of September, 2021.

                           _John A. Ross_

                           **JOHN A. ROSS**
                           **UNITED STATES DISTRICT JUDGE**